IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 12, 2004 Session

**ROBERT A. HAYDEN v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Williamson County**
**No. 699-211      Timothy L. Easter, Judge**

---

**No. M2004-00856-CCA-R3-PC - Filed December 10, 2004**

---

The Defendant, Robert Hayden, pled guilty to aggravated robbery, especially aggravated kidnapping, and two counts of aggravated rape. His plea did not include an agreement as to his sentences, and he was subsequently sentenced by the court to twelve years for the robbery, twenty-five years for the kidnapping, and twenty-five years for each of the rapes. The sentences were imposed in such a manner as to result in an effective sentence of sixty-two years. The Defendant subsequently filed a direct appeal, claiming that his sentences were excessive.[1] This Court affirmed the trial court's judgments. See State v. Robert A. Hayden, No. M2000-00901-CCA-MR3-CD, 2001 WL 567869 (Tenn. Crim. App., Nashville, May 25, 2001). The Defendant then filed for post-conviction relief, alleging that he received ineffective assistance of counsel in conjunction with his guilty plea and sentencing hearing. He further alleged that his plea was unknowing and involuntary because he was under the influence of medication at the time. After an evidentiary hearing, the trial court denied relief. This appeal followed. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which Gary R. Wade, P.J., joined. JOHN EVERETT WILLIAMS, J., concurred in results only.

Kenneth J. Sanney, Franklin, Tennessee, for the appellant, Robert A. Hayden.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Ron Davis, District Attorney General; and Mary Katherine White, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]The appeal also concerned two certified questions of law not relevant to this proceeding.

## OPINION

The facts of the Defendant's crimes were summarized by this Court on direct appeal as follows:

On the morning of January 17, 1997, the defendant entered the residence of the victim, Beverly Becker, and confronted her with a gun. The defendant warned the victim, "Be quiet. I don't want to hurt you." After determining that no one else was in the residence, he removed $200 from the victim's purse. The defendant then forced the victim to her bedroom and ordered her to remove her clothing and lie face down on the bed. The defendant removed his pants and attempted intercourse. The victim asked the defendant to put his weapon down and when he did so, the two struggled over it and fell to the floor. Although the victim was not sure whether the defendant sexually penetrated her, she believed that he had ejaculated. When the defendant recovered his weapon, the victim attempted to calm him by offering to cooperate. The defendant then forced the victim to perform oral sex. Afterward he directed her to again lie face down on the bed and penetrated her vaginally.

When finished, the defendant ordered the victim to get dressed and said, "I don't know what to do with you. . . ." When he asked her to help find something to bind her, the victim led him to her husband's closet. The defendant obtained three belts and took some change from a valet. He bound the victim's hands and ankles. After rummaging through the victim's jewelry box, the defendant left the bedroom for a brief period before returning to tighten the victim's restraints. The defendant then left, disconnecting the telephones as he did so. Afterward, the victim was able to make her way to a neighbor's house to ask for help. The victim estimated that the defendant was in her home between 50 minutes and one hour.

State v. Robert A. Hayden, No. M2000-00901-CCA-MR3-CD, 2001 WL 567869, at *1 (Tenn. Crim. App., Nashville, May 25, 2001).

The Defendant pled guilty to aggravated robbery, especially aggravated kidnapping and two counts of aggravated rape. After a sentencing hearing, he received an effective sentence of sixty-two years.

The Defendant did not testify at his post-conviction hearing but submitted by stipulation an affidavit setting forth his complaints against his trial counsel, an assistant public defender. The affidavit states, among other things, that the attorney conferred with the Defendant only twice prior to his guilty pleas, each meeting lasting less than one hour. It further alleges that Counsel failed to discuss with the Defendant the extradition process (the Defendant was incarcerated in Kentucky at the time he was charged in Tennessee); failed to discuss the State's evidence against him revealed during discovery; failed to discuss any theories of defending the charges; failed to explore whether he should file a motion to suppress items recovered in a search; did not prepare the Defendant

adequately for the sentencing hearing; failed to obtain witnesses for the sentencing hearing; and did not adequately cross-examine a State's witness during the sentencing hearing. The affidavit also states that, during his plea negotiations and on March 3, 2000, he was taking prescribed medications that "impaired [his] ability to think clearly and caused [him] to be confused and submissive," thereby causing him to be "neither able to properly participate in [his] defense nor fully understand the consequences of [his] actions."

Trial counsel testified at the post-conviction evidentiary hearing. He stated that he had adequate contact with the Defendant to prepare his case, but that the first time he spoke with the Defendant, the Defendant

> admitted that he had perpetrated these crimes and admitted in detail how they had happened, which corresponded with all of the testimony by the victim and all of the evidence that the police had. His only desire was to attempt to get as lenient a sentence as was possible. He never wanted to go to trial.

Counsel stated that, in spite of his negotiations with the State, the only plea-bargain offer he got "was in the range of sixty to sixty-five years." The best the attorney could do was to "badger" the State into agreeing that the plea would contain two certified questions of law for appeal. The attorney acknowledged that he did not develop a theory of defense and never advised the Defendant that a trial might produce a better result. The attorney testified that he did not think a trial would be beneficial because "[t]he victim was basically a prosecutor's dream as a witness." He continued: "[The Defendant] had no defense. He admitted his guilt to me and there was no defense that I could raise in good faith, and all he wanted to do was plead." The attorney admitted that he never requested a mental evaluation of the Defendant, never inquired into medication, did not explore the possibility of a suppression motion, did not research the chain of custody regarding DNA testing done in conjunction with the State's investigation, and made only one effort to contact potential witnesses for the sentencing hearing.

Counsel stated that, in conjunction with entering the guilty pleas, he asked the Defendant if he was under the influence of any mind-altering substance and whether his pleas were voluntary and knowing. The lawyer testified that the Defendant told him that he "was not under anything that would affect his ability to understand what he was doing and that it was knowing and voluntary." With respect to the sentencing hearing, the lawyer testified that he "thoroughly explained the process of the sentencing hearing to [the Defendant] and . . . [h]e was also aware that he could testify, but could not be forced to testify."

During the sentencing hearing, the State called as a witness the victim of the prior rape for which the Defendant was incarcerated in Kentucky. Counsel objected to this witness, but the trial court overruled his objection. Counsel was not prepared to cross-examine this witness, but did not think that requesting a continuance would be beneficial. Counsel testified that he did not think that this victim's testimony "had that much impact on the sentence that [the Defendant] ended up with."

The trial court issued a written order denying the Defendant's claim for relief. With respect to the Defendant's claim of ineffective assistance of counsel, the order states, "[O]n all conflicting testimony between the [Defendant] and [Counsel's] testimony at the evidentiary hearing, this Court specifically credits [Counsel's] testimony." The order continues:

> [Counsel] met with the Petitioner on several occasions prior to the entry of his plea and thoroughly investigated the allegations set out in the indictments. [Counsel] spent time reviewing not only the evidence which was made available to him by the District Attorney's Office but visited the Brentwood Police Department and the investigating detective for complete, open-file discovery.
>
> The Petitioner claims several deficiencies on [Counsel's] part in failing to fully investigate or become familiar with the Petitioner's case. Specifically, the Petitioner complains of [Counsel's] failure to investigate and familiarize himself with the Petitioner's prior rape conviction in the State of Kentucky before the sentencing hearing. However, this Court finds, based on the testimony of [Counsel] at the evidentiary hearing, that the Petitioner's only desire was for [Counsel] to procure "the best deal he possibly could." [Counsel] fully and properly advised Petitioner of the potential range of punishment and followed his client's wishes.
>
> The Petitioner's claim of ineffective assistance of counsel is not supported by the record of his submission hearing. On this specific issue, the Court asked the Petitioner during the entry of his plea on November 15, 1999, if he was satisfied with the services of his attorney. The Petitioner indicated that he was satisfied.
>
> This Court finds that [Counsel] fully explained the Petition For Waiver of Trial By Jury and Request for Acceptance of Plea of Guilty to the Petitioner, and the Petitioner so advised this Court when he entered his plea. Additionally, this Court finds that the representation of Petitioner at the sentencing hearing was not deficient in any manner. [Counsel's] instruction was to get the best deal he could. There is nothing in the record that suggests the advice given the Petitioner by [Counsel] regarding the Petitioner's possible sentence exposure and length was erroneous and/or deficient. Simply because the resulting sentence was not as gratifying as the Petitioner had contemplated is not a basis to second [guess] [Counsel's] performance.
>
> In short, this Court finds that [Counsel's] representation at all times of representation exceeds that which is demanded of attorneys in criminal cases. [Counsel's] performance was not a violation of either the Sixth Amendment of the United States Constitution or Article 1, Section 9 of the Tennessee Constitution, which protects the Petitioner's right to receive effective assistance of counsel. [Counsel's] performance in representing the Petitioner at both the submission hearing and sentencing hearing fell well within the range of competence demanded of attorneys in criminal cases.

With respect to the Defendant's claim that his plea was not voluntary, the trial court found as follows:

The issue of voluntariness and knowingness of the Petitioner's plea was addressed on several occasions during the submission hearing which lasted for thirty-eight (38) minutes. After being sworn, the Petitioner stated to the Court that he understood a very complicated plea which raised due process issues, certified two questions of law to the Court of Criminal Appeals and addressed enhanced parole eligibility dates. The Petitioner on numerous occasions assured the Court that he understood all of these issues and voluntarily entered his plea.

Additionally, the Petitioner signed a Petition For Waiver of Trial By Jury and Request For Acceptance of Plea of Guilty and was specifically asked by this Court if he was under the influence of alcohol, narcotics, drugs or any other mind altering substances at the time he entered his plea. The Petitioner assured the plea-receiving Court that he knew what he was doing and that the Court should have no concern that this issue would subsequently be raised. He specifically certified to the plea receiving Court that he was not under the influence of any mind altering substances and he understood his actions and that they were both knowingly [sic] and voluntarily [sic].

The Court finds that the Petitioner's plea was voluntarily and knowingly submitted. The Petitioner has failed to show by clear and convincing evidence otherwise. This finding is completely supported by a review of the plea video, the Negotiated Plea Agreement documents, and the testimony of [Counsel] at the post-conviction relief hearing. The Petitioner has failed to demonstrate by clear and convincing evidence that the medication he was taking at the time of the plea, if any, had any impact on the voluntariness of his actions on November 15, 1999.

The Defendant now challenges the trial court's findings and conclusions.

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the

range of competence demanded of attorneys in criminal cases.  See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland, 466 U.S. at 686.  This overall standard is comprised of two components: deficient performance by the defendant's lawyer, and actual prejudice to the defense caused by the deficient performance.  See id. at 687; Burns, 6 S.W.3d at 461.  The defendant bears the burden of establishing both of these components by clear and convincing evidence.  See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461.  The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim.  See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea.  See Hill v. Lockhart, 474 U.S. 52, 58 (1985).  The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness."  See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462.  The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689.  The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks, 983 S.W.2d at 246.

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).  This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise.  See id.  "However, a trial court's conclusions of law-- such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions."  Id.

In reviewing the transcript of the evidentiary hearing conducted in this post-conviction matter, we are concerned that trial counsel did so little to confirm independently that his client's desire to plead guilty was the best legal course of action to take.  Counsel admitted that he never developed a theory of defense.  He made very little effort to test the overall strength of the State's case.  He determined that the victim was a "prosecutor's dream," but did not investigate whether

there was a method for otherwise attacking the State's case. Moreover, although the Defendant admitted the crimes to his lawyer, it remains the State's burden to prove its case beyond a reasonable doubt. A defense attorney commits no ethical breach by forcing the State to carry its burden of proof, even when the attorney's client has admitted participation in the charged crimes. It appears that trial counsel took his marching orders from his client, rather than independently determining the best course of action for his client to take. It is a lawyer's obligation to advise his or her client of the possible avenues available and the likely outcomes of each: Counsel admitted that he never advised his client that a trial might be preferable. Counsel simply proceeded with trying to negotiate a plea, even when the State proved obstreperous during these discussions.

Nevertheless, even if we were to find trial counsel's representation to be deficient, the Defendant has failed to establish that, but for his attorney's alleged errors, there is a reasonable probability that he would have insisted on going to trial. Counsel's testimony, which the trial court accredited, was consistent and emphatic that the Defendant did not want to go to trial but wanted to plead guilty. The Defendant has introduced no proof that, but for his attorney's allegedly deficient performance, he would have gone to trial. Indeed, the Defendant does not even make this claim in his affidavit. Accordingly, we conclude that the Defendant has failed to prove by clear and convincing evidence that he was prejudiced by his attorney's performance. The Defendant is therefore entitled to no relief on the grounds of ineffective assistance of counsel.

The Defendant also claims that he did not enter his guilty pleas voluntarily because he was under medication at the time of his pleas. The Defendant introduced proof at the post-conviction hearing that, on the day he pled guilty, he took (under custodial supervision) a drug called Trilafon. Also admitted at the hearing was an excerpt from the Physician's Desk Reference website stating that "Trilafon is used to treat schizophrenia and to control severe nausea and vomiting in adults." The excerpt further provides that one of the possible side-effects of Trilafon is "confusion." However, the Defendant introduced no expert testimony as to why he was taking Trilafon or what side-effects, if any, the drug induced in him. The Defendant's proof that his plea was not voluntary because of the medication he took on the day of his plea hearing is simply not sufficient to establish that his pleas were not constitutionally valid. This issue is without merit.

The Defendant also contends that his pleas were not voluntary "due to the ineffectiveness of his trial counsel." We find this assertion to be without merit. The proof at the post-conviction hearing established that the Defendant wanted to plead guilty and did not want to go to trial. There is nothing in the record to convince us that the Defendant would have agreed to go to trial even if his lawyer had advised him to do so. The Defendant's real complaint is that his sentence is too long. However, the Defendant pled guilty without an agreement as to his sentence and his decision to plead guilty was based on his own desire: He did not plead guilty because his lawyer told him to. Again, the Defendant has failed to prove his allegations by the requisite quantum of proof. The Defendant is therefore not entitled to post-conviction relief.

Accordingly, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE